Good morning, your honors. Scott Shepherd for Appellant Technica. Judge Erickson, I hope you find the weather nice. Thank you for coming out. I love being in California. I love being in North Dakota, too. Judge Hurwitz and Judge Piaz, thank you with Judge Erickson for your time this morning. We are here on an appeal from a motion for summary judgment, so obviously the standard is de novo. We're dealing with the Miller Act, which is a highly remedial act, and it's purposefully so, because what it does is it assures those working on federal projects that they will be paid. So let's cut right to the chase in this one, because I think it's just one issue, really. In general, our case law says that we borrow from state law to determine contract rights under the Miller Act. In this case, the district court borrowed the if you're not licensed, you can't be paid. Why shouldn't it have borrowed that? I'm sorry, give me the last part. Why shouldn't it have borrowed that law in order to interpret the rights and obligations between the parties? Very simply, it's a simple issue of federalism and supremacy clause. The Miller Act specifically addresses the right of those having a direct contract with a subcontractor, and they have the same rights that you just talked about. In fact, interestingly, this is the same project, the same subcontractor, OTI. And the Miller Act goes specifically to give a right to a person having a direct contractual relationship with a subcontractor who brings a civil action on the payment bond on giving written notice to the contractor within 90 days on the date on which the person did or performed the last of the labor. But the Act doesn't say what you do when the contract would not be enforceable under state law for some reason. So why shouldn't, as the district court here did here, we also apply that portion of state law to determine what the contractual obligations between the parties were? There are two reasons, and let me start with the fundamental policy reason first, which is the idea of the Miller Act is it gives people a remedy and it encourages people to bid. It reduces their risk premium by being associated with bidding on a project and not getting paid. It allows federal government to draw from a broader collection of people who might bid on the project. If someone wants to work in Arizona, do they have to go get an Arizona contractor's license first? Or Nevada? No. They can go work in different spots in the country on government projects without having to comply with individual state laws. And that encourages getting the lowest responsible bidder on these projects. And that's something recognized by the Supreme Court in Leslie Miller. Granted, that wasn't a Miller Act case, but whether or not a state could impose penalties for a contractor working on a federal project without a license, but clearly that's untenable from a policy point of view. I think that it can't work. Second, it would just be flatly inconsistent with every single case that has ever been decided about whether a contractor's license can interfere with rights under the Miller Act with one exception, and that's the case from the district court in the Southern District of California that's before you. I don't think it makes sense. What we look to, and in fact the Walton Technology v. Westar Engineering case that Judge Pai has authored a decade ago, talks about you look to state law for the measure of damages. You look to state law. Nice of you to say that, but I don't. I barely remember a case that we handled last week, let alone ten years ago. He's not sure he was right back then either. I think the fundamental premise is in that case, and it's exemplified throughout the cases, is the Miller Act determines in that case the word was, a subcontractor's right of recovery is conditioned on the passage of time. That's what the Miller Act does, and you look to state law for the measure of damages. Well, we also look to state law to see, don't we, to see whether they actually had a contract. Well, sure. That determines what you can recover under the contract. If the contract was for $100,000 or $125,000, you look to that. If it was $10 an hour versus $12 an hour, clearly there was a contract here, and we've got Technica providing $895,000 worth of labor based on that, and Candelaria knew throughout the entire process. Candelaria was actually specifically requesting certified payrolls directly from Technica because it knew OTI wasn't paying, because it knew it wasn't paying OTI. Well, but let me just try this again, and I think it's the only real issue in the case. Our case law says to some extent we borrow state law to determine contractual rights and remedies. California has determined that an unlicensed contractor shouldn't have a remedy. The Miller Act is silent on this issue. Why shouldn't we apply California law here? Because California law should apply to California construction projects, things that California has the right to regulate. The federal government has the right to regulate federal projects, and it does that. In fact, the procurement process is handled through the FARs, and the contracting officer says, is that prime contractor responsible? Will they get this project done? Can I rely on them? And they make sure that a bond is issued to protect those. Could the feds require the prime contractor to make sure that the subs have or properly have state contract licenses? Sure. They do that here? No. The contracting officer could certainly create requirements that say, in this project, you can only hire subcontractors that are licensed in the state where the project is being performed, but they don't do that. I mean, it's just not realistic. And the other thing that's critical about that is, and I think one of the cases, maybe even a Supreme Court case, McAvoy, talks about the primes can protect themselves by requiring their subs to get or they can require their bonds to provide subs or their subcontractors to provide bonds. So the prime contractor has a great deal of control here. And if I could, just one thing. You said there's only one issue. There is, I think, a second issue, which is whether Technico was required to have a contractor's license at all. And I think certainly there was – I think it did not under the labor provider exception. Right. But if you win on the first one, the second one becomes irrelevant. That's correct. And I take it, did the district court reach the second one? The district court found – well, it had to. It found that we were not a labor provider in order to find we were required to have a license. And why – so if we get to that, why is it – was the district – this was summary judgment. Why was the district court wrong? Because there are – it lit a minimum conflicting facts that establish whether or not Technico was just a labor provider. And the details of that are laid out in detail in our brief and particularly in the excerpts of record. If you'll give me just one moment. Candelaria referred throughout to Technico as a labor provider. The testimony of Gary Arnold said that he was in charge. He was the one who chose Steve Weber to be a foreman. And, frankly, Steve Weber took all of his direction from Gary Arnold. Adrian Harbison – Gary Arnold was with OTI. And then Adrian Harbison was appointed to oversee the project for Candelaria, and he also gave direction to Weber. Technico never gave any direction to Steve Weber on how to perform the project. He was just responsible with regard to Technico for overseeing payroll processing and getting the workers paid. They were a labor provider like Labor Ready or Manpower. I saw that he had those forms. I'm just puzzled. And I want to just go back. Under the Miller Act, if we apply the law of interpreting contracts of the state, if you look at the contractor licensure requirement, that's actually an incapacity statute. And it incapacitates a person from having the legal ability to form or enter into a contract to provide a certain type of services. Now, the question I have is, how do you take the formation principles and separate them from the contract themselves and apply different bodies of law to them, right? Because you concede that we apply state law to interpreting the contract, but somehow the formation of that contract, you're saying, there's a federalism question that preempts the state formation. How and why? The very simple dividing line is if it's a federal government contract, then people working on that don't have to have state licenses. The state is regulating work within its borders on its stuff, but it can't go tell the federal government who the federal government can or cannot hire or who the federal government's selected prime contractor can or cannot hire to work on a project. What if the sub, what if the prime said there was never a meeting of the minds between me and the sub? They think we agreed to pay $5,000. We think we agreed to pay, you know, $1,000. We would interpret that contractual formation argument according to California law, wouldn't we? Between the sub? Well, between the parties in dispute, between the party making the Miller Act claim and it's actually the sub, the sub-sub and the sub in this case. But if the notion was if somebody made a claim on a contract and the other side said, I never agreed to that, that was never part of our contract, we never had a meeting on the minds on that issue, whose law would be used to determine whether there was a meeting of the minds? I think if you had to deal with a meeting of the minds, you would probably look to state law, but you would still have an implied and in fact contract if there's somebody doing work. And that's really what we get to. And there's a case out of Washington, one of the cases, and now the cases are blurring together, I apologize, it's in our brief, where they dealt with just that. The issue was the subcontractor hired a sub-sub and then the subcontractor didn't do all the work it needed to do and the sub-sub started digging the foundations and getting it ready. And then the court looked to, maybe it's the Continental Casualty v. Schaefer case, the court looked to Washington state law to determine whether or not those extra contractual work was still something that could be recovered. Could be recovered under a quantum narrow it, or? Yes. But under California laws, I understand that if you're an unlicensed contractor, you can't even recover under quantum narrow it. Yeah, you cannot sue as an unlicensed contractor in California. You just can't. What's the purpose of that? In theory, they say it's to protect and safeguard people against unlicensed contractors, so they've made the penalty very, very harsh. But again, that's if the Miller Act, if anybody had noticed that the Miller Act said you only recover if you're compliant with state laws, which it does not. If it said that, then Technica could have looked and decided whether to bid on this project or not. But Technica can look at the Miller Act, like any other subcontractor in the country, and say, I'm a protected person. I have the right to be assured that I'll get payment. And that bonding company is there with Candelaria, and Candelaria knows it's not paying. So who, you know, Candelaria can let its assurity know it's not making the payments, these claims are coming. But Technica has to be able to rely on a federal statute. And all of the cases that exist in courts of appeal, the Eighth, the Tenth, the State Supreme Court's cases in like Arkansas, district court out of Tennessee, all of these cases all say that state laws cannot frustrate federal statutes and remedies. Okay. You want to stay at the balance of your time for a minute? I would like to do that, Your Honor. Thank you. Thank you. Good morning again, Your Honors. I think the basic issue is preemption. This project just keeps on giving, doesn't it? It's hard to go back to back. You know, you kind of mishmash as far as the records and such. Anyway, preemption. It's to the extent there's an actual conflict. That is what's preempted.  Now, let me just correct one thing. You do agree that it's a federal cause of action here. What the Miller Act says is there's a right to bring a civil action. Right. So that's a federal cause of action. And that's a right. But the State statute then says if you don't license, you can't bring an action, so that's contract formation. But it also says separately. No, that's not correct. Okay. That's not correct. The State statute. We have statutes that say if you're not a registered, you know, if you're not a lawfully if you're not lawfully registered in the State of California as an out-of-state corporation, you can't bring a lawsuit either. Okay. But this statute in California, it's California Business Code 7031A. Right. Specifically says that you can't bring or maintain an action. That's preempted. Because that conflicts with what the statute says right in the preamble of the statute. 3133B, right to bring a civil action.  So let's assume there's an absolute square conflict. We have a federal cause of action. And we have a California statute that says I don't care if you have a federal cause of action, you can't sue. Why doesn't the federal statute win? Because you have conflict preemption, and it's to the extent that in the Supreme Court cases of Guyer and all the others, so you have to assume there's not preemption, that there has to be actual conflict preemption. So the State statute is preempted as far as bringing an action. The statute goes on comma. But there's nothing to, no value to bringing an action if one may never recover in that action, is there? But what it does is it gives you an action, and then with all the cases, and we cited them right in the beginning of our brief, it's subject to state law defenses. The cases that are cited by Technica, as far as the federal cases, those were all federal questions. And what Schaeffer and Continental Casualty, a bunch of them say, is in the Miller Act that state law defenses do apply. Well, but I think what the cases say, maybe he's overstated a tad, I think what the cases say is that we borrow state law where we're applicable to determine the contractual rights and obligations of the parties. But when state law would, as your opponent suggests, conflict with the purpose of the Miller Act, why should we borrow it? Page 16 of Continental Casualty v. Schaeffer says that page, and we cite it in our brief in page 16, the Miller Act claims are decided as though a state court would because the, quote, rights and liabilities of the party under the subcontract should not depend on the choice of forum sought to enforce those rights. So this is the Ninth Circuit, and we just give string sets. It's all the same, that you decide it as a state court would looking at that subcontract. But none of those cases deal with this issue. That's really the problem. It's helpful language, but this is an issue of first impression in the circuit, isn't it? Well, let's look at the real cases that did the analysis. You've got Leslie Miller to start. And they did conflict preemption. It was an older thing than as far as the procurement codes. But it was similar where you had a responsibility determination. And there the Supreme Court in Leslie Miller says you cannot enforce on a state law that looks at responsibility the same way that the government did for a prime contractor. Then you've got Gartrell. Again, they do the analysis. They do the conflict preemption. And there they actually looked at the California statute that we're looking at. And it says there's conflict preemption. So then you have a dozen cases where they look at the first tier subcontractor, which is much different than a second tier. There's a statement in Technica's brief that the distinction between a first tier and second tier is a distinction not supported by the Miller Act. That's just false. If you look at 3133B2, that's what it's all about. But it's all intended to provide a remedy for these folks, right? You know, there's a defense. And there's a right to bring an action. That's not an answer to my question. The purpose of the Miller Act in this setting is to protect the contractors who supply labor and material to a federal project. It's a right to bring an action. It's not a right to recover. It's not a right that guarantees. Why would you have a right to bring an action and not recover? Well, then let's say there's set off. Let's say there's mitigation. They all apply. And that's what the Ninth Circuit has said time and time again. And we have. But those deal with the remedies. Here my difficulty is we have a Miller Act cause of action that says you have a right to sue. But you're saying not really. You have a right to sue, but not really because you're a California unlicensed contractor. And so that really vitiates the Miller Act claim, doesn't it? No. If you want to be a second tier, then you have to adhere to certain rules. I mean, look, I heard a statement this morning, and it's in the briefs. On a federal project, you don't have state licensing laws. What about a third tier? I mean, does a third tier contractor then not have to follow state laws? And is any of that in the record, by the way, in this case about practices throughout the country? No. So we really can't. I mean, I like to pretend I'm an expert on everything. And it's certainly not in the record below. Okay. Never was this discussed. But I still need you to focus on what I'm asking, which is that when the state law completely, without looking at the merits of what was supplied and how much was given and whether it was good or bad, when the state law completely vitiates the Miller Act right to sue, which is right in the statute, should we follow it? The state law for licensing is to protect the consumer or to protect the person that's getting the work done by the party. So your answer is yes, we should follow it. The answer is yes. But if you look at the FARs, the government wants to make sure there's responsibility that has a dozen different qualities. Under the FARs, I couldn't – my same question to you that I asked your opponent here. Why couldn't the contracting authority impose certain requirements on the prime and on the prime subs and whatnot to only hire contractors who are licensed in the state where the work is being performed? But the FARs are what they are. We can't make up what the government says. That's not my question. Could they impose that requirement throughout the project? No. Why not? Because the FARs don't provide that. No, but could they? Could they? Could they? Could they? They could actually make more FARs that give them that power. With the FARs, and we've quoted them, that it talks about prospective contractor, quote, must affirmatively demonstrate its responsibility, including when necessary, the responsibility of its proposed subcontractors. It only goes to the first tier. And that's why there's not conflict preemption. So could the government under that? It talks about its proposed subcontractors. Subcontractors are defined in the Supreme Court, MACL, BFD, RITS, having a direct relationship. I don't think anybody's contending that the FARs are preemptive. The question is if the federal government wanted all, whatever tier, subcontractors to be licensed in the state, couldn't it say so? It can enact any statute it wants. I don't know how else it would do it because it wouldn't be enforcing the FARs. And I don't know of any reason or statute or right that the federal government has to say, we're going to kick people off that's second tier or third tier or fourth tier because they're not licensed. The responsibility on the FARs only goes to the prime and the first tier. Understood. But there's nothing to say that the government now has to look to the second tier because that's not what the FARs do. The FARs am I missing your question? Yes. I'm not. Tell me why. We both asked you the same question. Well, why couldn't the government require in any of these federal contract building projects that the sub. The sub sub or the sub? The sub. It can. Require that all work performed is by somebody who is licensed in the state where the project is being, is under construction. That's not what the FARs, it goes to the responsibility of the sub. I realize that's not, I realize, I realize that's what the FARs says, but why couldn't they through a contractual relationship do that? It's nothing in the statutes or the record or anything here to say that the government, when it looks to its proposed subcontractor, that it now should say to the proposed subcontractor, now you look to the responsibility of the sub sub. I mean, could they do it? I don't know under what statute or what right they would have the ability to do that. Unless the government is like the king and it can say this is what I want, but. They have a contract, sure. They have a general contractor, and the general contractor has been determined responsible, and the general contractor assumably is now making responsible for its sub, but to say the government, the government has the right to look at the sub, and that's the discretion it has. So you. Go ahead, I'm sorry. Are you saying that the government in its call for bids couldn't make as a requirement of the contract it's going to be entered into that all sub, second, third, fourth tier subs be licensed under state law? Are you saying they can't do that? There's nothing in any of the statutes we've looked at on what a government can do as far as its bid requirements. And, you know, they can bid and say what they want from the general, and they can look one step further. I don't know anything that gives them the right to say we want to see responsibility third tier, fourth tier. It's just not there. So can we do that as a matter of contract? You know, I have not seen any contracts. We can speculate and suppose what they want to do. It's not in this case. Can we sort of break this down? Could this California defense be asserted by the government against the general? No, because that is preempted. Preempted, and where is it preempted? So right in the FARS it's talked about. It's got to be preempted by the Miller Act, doesn't it? The fact that they've contracted with them, they have to make a determination of the contractor's responsibility. That's required. Just focus in on the Miller Act for a second, not the FARS. Okay. Is that preempted under the Miller Act? The licensing of the general? Let's assume the general is unlicensed in California and the general provides work to the United States. May the United States assert the California statute as a defense? No, because it's conflict preemption and that's Leslie Miller and that's Gartrell right on point. First line sub?  No, because it's the rationale of Gartrell and Leslie Miller that there's an actual conflict. The Supreme Court says look to actual conflict. And what is the actual conflict within the Leslie Miller case? Because the responsibility is right there in 48 CFR 9.103C that there the general contractor has to make sure that its proposed subcontractor is responsible. But isn't the conflict in the end with the Miller Act? These are regulations promulgated under the Miller Act. I don't know if the FARS are necessarily promulgated under because the FARS are much broader than the Miller Act in many other aspects. I know, but do you think the conflict is that there's a conflict in this case between the federal regulation and the state statute? Or is it a federal statute and the state statute? It's the conflict, and this is, again, Leslie Miller and Gartrell. It's the conflict between the FARS and the state licensing or whatever state statute makes it so that someone can't collect. So what we're saying is the conflict is you can bring an action. That's your right. But it's no guarantee of recovery, and that's true in all Miller Act cases. I've been practicing for 25 years in surety law. There's defenses, and they get to be asserted under state law. And here, because there's not conflict preemption, that's what we're talking about. Let me try this one more time because I'm still not ‑‑ I think we're missing each other. Assume for a second there were no FARS, and we just had a contract between the general and the United States. Could the United States assert the California statute under the Miller Act as preemptive? I don't know how to answer that because the FARS are the responsibility, and that's what all the cases have looked to, you know, that we're the responsibility. And that's actually the reason that the general contractor in the first year don't have to get a license is because of the FARS. And it's not that you don't have to get a license for any federal project. It just doesn't do that. And if you were to follow the reasoning of technica, which you would get is a third and fourth year, it doesn't have to get a license. Let me address the labor provider exception for a moment. They do provide labor. But what happened in this case, and the testimony is unequivocal, Steve Weber supervised his people with technica. And they'll say, well, they called Gary Arnold, who's with OTI, what should I do? But then he carried it out. He effectuated the means and methods on the project. That's supervision. And that's what the cases we cited say is supervision. We cited one from California. There's a dispute about that the way I read the record. No, it's really not. What you can get from Amy Roddy, and she was the person with technica, is, well, I didn't tell him to do it. The reality is it was done. And the people that had personal knowledge of what happened on the project, he directed it, and it's 100% clear. The other thing, totally in the disjunctive, is that they supplied 100% of the labor. That is separate. Either one of those leads to the labor provider exception not applying. So, therefore, under California. They applied 100% of the labor? Yes. But did they have, were they actually, was, were they responsible for the construction? Under the subcontract. That the construction met the terms and conditions of the overall contract. They were providing all the labor to work on OTI's subcontract scope. 100% of the labor. Again, that's, there's no dispute about this. Well, wasn't OTI responsible for the work then? OTI didn't do any, they didn't supply any labor. They didn't supply any of the labor. Well, what was their role? What was their contract? What was their role at all? They really made all of their scope done by the sub sub. So, they just farmed out. And that happens, general does it to the sub. Sometimes the sub does it to a sub sub. What happened here is 100%. Okay. All right. Thank you. Thank you very much. There's a little bit of rebuttal time left for rebuttal. A couple of things. First, to start out with the last point. McEvoy makes clear, to be a subcontract, you have to take over part of the work. And that didn't happen here. Technica provided the laborers, even a foreman, requested by OTI. OTI had Gary Arnold supervising it and provided the direction. They didn't take over the work. They didn't get the plans. Is there a dispute about any facts, though? It seems to me what you're arguing about is how to interpret the facts, as opposed to whether there's a dispute about them. I don't hear the other side saying anything different than what you're saying, which is that he came to the job and supervised people. I think it's a factual decision not properly addressed on summary judgment. That's what I'm asking. Because what fact is in dispute? They say that Steve Weber was our foreman directing the work, and we say Steve Weber was a foreman directing the laborers where to go under the supervision and direction of OTI. And I think that's a factual dispute and should be addressed not on summary judgment but through a determination by a trier fact, with the full, you know, putting the witnesses on the stand and hearing from them and judging credibility. When we come back to really the pure conflict here, I think it's critical to remember that the Miller Act says that the persons that are protected have a right to recover the amounts unpaid. So really that sets the amount that is due here, the amounts unpaid with the amounts that were billed and not paid. That's all set out in the brief. I think it's important to remember when we talk about the government, okay, let's go to the California statutes to protect the consumer. Here the consumer is the federal government. The federal government has many ways to protect itself, and it starts out by selecting. Well, I don't know. These days it's kind of suspect. They may need protection from the states. That's for another day, Your Honor. That's for another day. And the real consumer here is the subcontractor, isn't it, that hired you? The subcontractor is the one making use, absolutely. And OTI wasn't licensed. And Candelaria is not making noise about that. Candelaria had the right as the prime. The government entrusted them and said you can get this project done right, and it helps the taxpayer to give the prime contractors the flexibility to assemble bids from across the country without worries about the vagaries of California law or Nevada law, that they can bring in the greatest number of bidders to find the lowest responsible bidder. And that's important in the procurement process, and that's actually emphasized in a number of the cases that have been briefed to you today, including, I think, McAvoy. And then when you talk about the Schaefer case, again, with regard to the measure of damages, I think what's important is remember there they said the work was state law controlled the recovery of the amounts above the contract specification. That's why they looked to the state law. And so I think under all of the circumstances here, it's just inappropriate to limit expressly given rights under the Miller Act and say you can't recover because you didn't comply with the state law. That would be turning things upside down and frustrate the expectations of all the parties and the best interests of the government and the taxpayers. Okay. Thank you, counsel. Thank you again for your arguments in this case. We appreciate it. Another interesting case. The matter will be submitted at this time.
judges: Erickson, Paez, Hurwitz